**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**DONALD COLEMAN**                                                                             **PLAINTIFF**

**V.**                                **NO. 3:15CV00272-JTR**

**CAROLYN W. COLVIN,**                                              **DEFENDANT**
**Acting Commissioner,
Social Security Administration**

### ORDER

On March 12, 2012, Plaintiff, Donald Coleman ("Coleman"), applied for disability insurance benefits, supplemental security income, and child's insurance benefits, alleging a disability onset date of April 10, 1992. (Tr. at 19). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 19-32). The Appeals Council denied Coleman's request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Coleman has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**I. The Commissioner's Decision:**

The ALJ found that Coleman had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 22). The ALJ found at Step Two that Coleman had the following severe impairments: gunshot wound to the back, anxiety/depression, borderline intellectual functioning, and adjustment disorder with anxiety. *Id.* At Step Three, the ALJ determined that Coleman's impairments did not meet or equal a listed impairment. (Tr. at 23).

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

Before proceeding to Step Four, the ALJ determined that Coleman had the residual functional capacity ("RFC") to perform light work except for the following limitations: 1) no more than frequent overhead reaching with the right upper extremity; 2) no more than occasional changes to the workplace setting; 3) interpersonal contact that is only incidental to the work performed; 4) 1-2 step tasks that can be learned by rote with few variables and little judgment; 5) simple, direct, and concrete supervision; 6) SVP 1 or 2 jobs that can be learned in 30 days; 7) reasoning levels of 1 or 2.  (Tr. at 26). Based on those limitations, the ALJ found that Coleman is incapable of performing past relevant work (Tr. at 30).

Considering Coleman's age, education, work experience, and residual functioning capacity, the ALJ concluded at Step Five that there are jobs that exist in significant numbers in the national economy that Coleman could perform.  (Tr. at 31). Thus, the ALJ held that Coleman was not disabled.  (Tr. at 32).

## II. Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of

> substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Coleman's Argument on Appeal

Coleman argues that substantial evidence does not support the ALJ's finding that he does not meet Listing 12.05C. Reviewing the entire record, the Court finds that the ALJ's determination was supported by substantial evidence.

The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits, without a determination of whether he actually can perform his own prior work or other work. *Id.*

In order to meet the requirements of Listing 12.05C, Coleman would have to show:

significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22; a valid verbal, performance, or full-scale IQ of 60 through 70; and a physical or other impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.05.

While there is evidence that Coleman has had difficulty with intellectual functioning, the only mental status assessments in the record are from a consulting state-agency psychologist and two other state-agency psychologists who reviewed Coleman's medical records. The ALJ properly relied upon those sources to support his decision that Coleman did not meeting Listing 12.05C.

On May 16, 2012, licensed psychologist Anita Gail Wells, Ph.D., administered the Wechsler Adult Intelligence Scale ("WAIS") test, and found that Coleman had a verbal comprehension index of 70, a perception reasoning index of 75, a working memory index of 80, a processing speed index of 79, and a full scale IQ of 71. (Tr. at 332). Dr. Wells indicated the IQ test results were valid. *Id.* One of three criterion for Listing 12.05C is a full scale IQ of 60 through 70. Because Coleman's score was 71, he did not meet the criteria. However, both Social Security regulations and the Eighth Circuit have recognized that, "in cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Commissioner] use[s] the lowest of these in conjunction with [Listing] 12.05." 20 C.F.R. § 404, Subp. P, App. 1, 12.00D.6.c; see also Subp. P, App. 1, 112.00D.9; *Phillips v. Colvin*, 721 F.3d 623, 630 (2013).

Coleman's lowest individual score was 70 on the verbal comprehension index, so it is conceivable that he could have met the Listing based on that score, *if* he met the two other criteria of Listing 12.05C.  However, an ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one-time examination by a nontreating psychologist. *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998); *Miles v. Barnhart*, 374 F.3d 694, 699 (8th Cir. 2004) (an ALJ may reject scores that are inconsistent with the record).

Dr. Wells reported that Coleman was cooperative in his interview and demonstrated no difficulty with communication. (Tr. at 334).  There was no evidence of inability to cope with typical mental/cognitive demands of basic work-like tasks. *Id*.  He appeared to have good attention and concentration. *Id*.  He exhibited adequate persistence throughout the evaluation. *Id.*  He was not taking mental health prescription medication and had no history of inpatient treatment.  (Tr. at 330). While there is evidence that Coleman was in special education classes during school, he reported that he could dress himself, buy groceries, cook simple meals, wash clothes and clean the home.  (Tr. at 333).  He also helps to care for his two sons, manages money, watches TV, plays video games, and attends church. (Tr. at 352).

On June 14, 2012, Dr. Christal Janssen, Ph.D., prepared a mental RFC assessment after reviewing Coleman's medical records and the other evidence in the record. (Tr. at 349-52). She assigned "great weight" to the opinion and specific findings of Dr. Wells. Based on the evidence, Dr. Janssen found less than significant limitations in understanding and memory, social interaction, remembering instructions, maintaining a schedule, interacting

5

with the public, and traveling in unfamiliar places.  (Tr. at 351). Coleman would have moderate limitations in sustained attention and concentration, ability to complete a normal workday without interruptions, ability to follow instructions and accept criticism, and ability to set goals and respond to workplace changes. *Id*. On October 10, 2012, Melissa F. Jackson, Ph.D., affirmed Dr. Janssen's findings. (Tr. at 388). The ALJ's RFC reflects the assessments of Dr. Janssen and Dr. Jackson that Coleman has some moderate cognitive limitations.  (Tr. at 26).

Coleman also argues that, in determining whether he met Listing 12.05C, the ALJ failed to recognize additional significant impairments on top of cognitive difficulties.  Such impairments are required for a claimant to meet Listing 12.05C. He lists those other impairments as gunshot wound to the back, anxiety and depression, and adjustment disorder. The symptoms from the gunshot wound limit Coleman in overhead reaching and were factored into his RFC, but do not render him disabled.  With respect to the anxiety, depression, and adjustment disorder, Coleman submitted treatment notes from only two doctor's visits where he expressed any mental health concerns. In those records, the provider noted only minimal depression and no thought disorder.  (Tr. at 418-24).  Coleman was not hospitalized for mental health illness and there was only one mention of taking anxiety medications in the record.  (Tr. at 418).  His lack of mental health treatment undermines the claim of disabling mental health conditions.  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility).

At Step Three, the burden rests squarely on the claimant to prove he met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Because of the paucity of mental health treatment records, the ALJ properly relied on the state-agency examiners to support his determination that Coleman did not meet a Listing. The ALJ did not err with respect to his Step Three finding.

### III.  Conclusion:

There is substantial evidence to support the Commissioner's decision that Coleman did not meet Listing 12.05C. The finding that Coleman was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 28th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE